**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| FEDERAL ELECTION COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:15-cv-00017-LPS |
| v. | ) ) | |
| CHRISTINE O'DONNELL, *et al.*, | ) ) | JOINT STATUS REPORT |
| Defendants. | ) ) ) | |

**JOINT STATUS REPORT**

This Joint Status Report is filed in response to the Court's January 28, 2016 Oral Order stating that "the parties shall file a joint status report updating the Court as to the status of discovery and indicating what documents, if any, have not yet been produced." (D.I. 50.)

*FEC's Position:*

The Commission has now responded to all written discovery that defendants propounded and defendants have responded in part to the Commission's written discovery while explicitly objecting to production of certain documents and suggesting that certain responses are subject to later development. The FEC and Defendants have generally indicated to each other that they have produced all of the nonprivileged, responsive documents that they intend to produce. Though many of defendants' responses to the Commission's document requests appear insufficient, the principal documents that have not yet been produced are detailed below.

The FEC is deposing Christine O'Donnell on February 3, 2016. Defendants have asked to depose Vicki Davis, an FEC employee, on a date to be determined. The Commission has made no final determination regarding whether it will seek to take any additional depositions.

### A.     Utilities

Regarding the Committee's payment of utility bills, Defendants have neither admitted in full the Commission's requests for admission nor produced documents to clarify the vast majority of amounts of utilities at issue in this case.  In addition to the Townhouse at issue in this case, Friends of Christine O'Donnell also leased other properties during some of the relevant period, and the reports filed with the FEC did not distinguish between the amounts paid for each individual property.  The Commission issued both requests for production of documents[1] and requests for admission[2] to ascertain this information.  Defendants have produced only portions of monthly telephone bills; they have produced no cable or electricity bills.  Nor have they produced copies of any cancelled checks for rent and utilities that might provide information about what payments were made for which property.  In response to the Commission's requests that defendants admit payments were for utility services "for" or "at the Townhouse" at issue, defendants belatedly and confusingly supplemented their responses on January 8 to be:

> Admit.  The allocation of the use of utilities, within the townhouse
> or without, is a matter of further discussion as the case proceeds.

By referencing the use of utilities "without" the townhouse, the defendants thus still have taken no final position on the requests and may continue to be contesting whether the reported utility payments, in amounts that total many thousands of dollars, were made for the townhouse at issue.  Defendants have not provided any documents to substantiate their refusal to admit the

---

[1]     The Commission's Document Request No. 4 was "Produce every item relating or referring to payments made by the Committee for rent or utilities at the Townhouse."  The Commission also sought through Document Request No. 1 items referenced in response to the Commission's interrogatories, which includes — by virtue of Interrogatory #1 — any document supporting defendants' refusal to fully admit any request for admission.

[2]     Requests for Admission #9 – 22 sought admissions that the Committee made the specific alleged payments in utilities.  *See* Plaintiff FEC's First Discovery Requests to Defendants (attached as Exh. 1).

payments were for the townhouse at which Ms. O'Donnell resided. Discovery closes in a few weeks, and there is practically no longer time to verify the utility payments through subpoenas that would burden third parties. The Court ordered that defendants provide responses to the requests for admission by December 18 and full document responses by January 8, and did not allow "for further discussion as the case proceeds." The Commission is thus requesting that the Court sanction defendants' violation of that order and deem these requests admitted.

### B. Financial Information

Defendants have objected to producing any documents regarding Ms. O'Donnell's ability to pay disgorgement or a civil penalty. The Court entered a stipulated protective order for this type of information on August 28, 2014. The Commission issued requests for admission[3] and document requests[4] on this subject.[5] On December 18, 2015, defendants refused to respond until liability is determined "and until a Protective Order can be arranged by the Court." On January

---

[3] Request for Admission No. 31 was that "Defendants have the financial capacity to pay a civil penalty or penalties in the amount(s) authorized by 52 U.S.C. § 30109(a)(6)(B) and 11 C.F.R. § 111.24(a)(2) for the violations alleged in this litigation." Request for Admission No. 32 was that "Christine O'Donnell has the financial ability to disgorge or refund an amount equal to any disbursements found to have been converted to Christine O'Donnell's personal use as alleged in this litigation."

[4] Document Request No. 5 sought "items sufficient to show O'Donnell's income for each of the years 2013-2015, including all federal and state tax returns O'Donnell filed for those years." Document Request No. 6 sought "items sufficient to show O'Donnell's assets and liabilities for each of the years 2013-2015." As noted earlier, the Commission also sought through Document Request No. 1 items referenced in response to the Commission's interrogatories, which includes — by virtue of Interrogatory #1 — any document supporting defendants' refusal to fully admit any request for admission. The Commission thus sought any documents supporting Request for Admission Nos. 31-32.

[5] The Commission's interrogatories also addressed Ms. O'Donnell's financial status, including No. 10 which sought a description "in detail" of "the amounts and sources of income earned by Christine O'Donnell during the years 2009 and 2010." That information addresses her motive for seeking a residence funded by her campaign committee. Though defendants have conceded that she was seeking a residence, they have not conceded that she was seeking one through campaign committee funds as a result of an inability to pay for one on her own.

3

8, 2015, defendants responded that an "answer is governed by the Court's Protective Order," but did not provide any answer pursuant to that order's terms. Defendants have not produced documents to the parallel document requests citing the same reasons. If Ms. O'Donnell argues that she is unable to disgorge the full amount of her violations or to pay an appropriate civil penalty, documentation regarding her ability to pay would be essential. The Court's Order requiring responses to the Commission's discovery requests by December 18 or January 8 did not exclude items that need to be labeled confidential under the protective order or that address remedies rather than liability. Bifurcation of this case is not necessary and would only provide an opportunity for defendants to continue their apparent years-long effort to forestall payment of civil penalties. The Court should sanction their failure to provide discovery responses and order that any arguments by defendants regarding an inability to pay are waived. The Commission also seeks the expenses including attorney's fees that are presumptively awarded when motions to compel are granted pursuant to Federal Rule of Civil Procedure 37(a)(5)(A).

*Defendants' position:* This Court has asked the parties to provide an update on the status of discovery. Defendants submit that they have now provided the FEC all the documents in their possession that are responsive to the FEC's requests. Previously, Defendants were considering whether to request bills from the electricity company, to explain the increasing and decreasing use of power in the campaign buildings rented by the campaign during the arc of the campaign. But those bills are in the name of David Hust, a former campaign staffer, who is now in Seminary, and the electricity company has a policy against releasing bills without the consent of the named customer. Defendants believe they can demonstrate the monthly fluctuations in power usage by referring to: i) the existing (and produced) list of multiple buildings rented, then released, during the arc of the campaign, ii) the existing FEC reports, which demonstrate the

4

occurrence of a "baseline" month, "slow" months, "active" months, and "slow" months again, and iii) by using other such documents in the FEC's possession.

As to depositions, the FEC will take the deposition of Ms. O'Donnell on February 3, 2016. Defendants will seek to depose only Ms. Vicki Davis, who works (or worked) at the Federal Election Commission during the height of the O'Donnell campaign.

With regard to the matter of disclosing of Ms. O'Donnell personal finances, Defendants restate, here, their two positions:

First, Defendants note that the FEC wants to know the state of Ms. O'Donnell's finances at the time the Candidate and Campaign Committee were searching for office space. But any relevance of this inquiry can only go to a question that is already admitted and established in this case: *Did Ms. O'Donnell hope to reside at the townhouse?* There is no dispute that she did. That hope was manifest at least by the time Ms. O'Donnell made her first sublease payment (years ago). Plaintiff's purported need to know of Ms. O'Donnell's finances at the time the Campaign Committee was searching for office space can only show Ms. O'Donnell had a motive to find a residence, not just to find a campaign office. But Ms. O'Donnell has *already admitted* she wanted a one-bedroom residence; this is not a matter to be proven. Any demand by the FEC that Ms. O'Donnell turn over her personal finances of six years ago to the FEC on this basis is burdensome and seems calculated only to lead to the discovery of established, or otherwise irrelevant, information.

Second, the FEC claims it needs to know, now, the current state of Ms. O'Donnell's finances even *before* the matter of liability is established by this Court. Ms. O'Donnell, as this Court can well imagine, finds herself in the unenviable position of having to either i) waive, now and forever, any future argument she is unable to pay any disgorgement that this Court may in

the future order *if* liability is established (because only a waiver can nullify the FEC's request for this personal information), or ii) disclose the current state of her personal finances to the government. Ms. O'Donnell requests of this Court now, and will again request during any discovery teleconference, that it bifurcate discovery on Ms. O'Donnell's ability to pay any disgorgement for liability only when and if liability is established and a substantial monetary disgorgement is ordered.

Finally, Defendants restate briefly one more point, here, to avoid referring to prior documents: The Defendants believe the remedies requested earlier by the Plaintiff are both unnecessary and excessive. The FEC's old requests for Ms. O'Donnell's finances are, at this stage of the case, either premature (with regard to disgorgement) or go to a fact already established (with regard to Ms. O'Donnell's motive in seeking a residence). And the FEC's new request for attorney fees now—and the question whether Ms. O'Donnell would be able to pay them—is another attempt to make relevant the matter of Ms. O'Donnell's finances. This request should be denied. The status of Ms. O'Donnell's finances should be delayed until such time as liability is established.

Respectfully submitted,

Daniel A. Petalas
Acting General Counsel
dpetalas@fec.gov

Lisa J. Stevenson
Deputy General Counsel – Law
lstevenson@fec.gov

Kevin Deeley
Acting Associate General Counsel
kdeeley@fec.gov

Harry J. Summers
Assistant General Counsel

Attorneys for Defendants:

Chris K. Gober, Esquire
/s/ *Steve Hoersting*
Steve Hoersting, Esquire
GOBER, HILGERS PLLC
1005 Congress Avenue, Suite 350
Austin, TX 78701

hsummers@fec.gov

Robert W. Bonham III
Senior Attorney
rbonham@fec.gov

/s/ *Seth Nesin*
Seth Nesin
Attorney
snesin@fec.gov

FOR THE PLAINTIFF
FEDERAL ELECTION COMMISSION
999 E Street NW
Washington, DC 20463
(202) 694-1650

February 1, 2016