IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FEDERAL ELECTION COMMISSION, | : |
| Plaintiff, | : |
| v. | : C.A. No. 15-17-LPS |
| CHRISTINE O'DONNELL, *et al.*, | : |
| Defendants. | : |

**MEMORANDUM ORDER**

Pending before the Court are Defendants' motions for various extensions of time (D.I. 76) and to supplement the record (D.I. 79). For the reasons stated below, the Court will deny the motions.

1. Defendants first request that the Court extend the time for them to file a notice of appeal. (D.I. 76 at 9) Defendants ask for a 30-day extension to the 30-day deadline for filing an appeal under Federal Rule of Appellate Procedure ("FRAP") 4(a)(1)(A); that is, Defendants request 60 days to appeal. (*Id.* 8-9) This case, however, involves a United States agency as a party (the Federal Election Commission ("FEC")), meaning that Defendants have 60 days to file a notice of appeal, pursuant to FRAP 4(a)(1)(B)(ii). Thus, Defendants already have the relief they seek.

2. To the extent that Defendants are requesting an extension beyond 60 days, they have failed to demonstrate the required "excusable neglect or good cause." FRAP 4(a)(5)(A). Defendants' request is premised primarily on their need for additional time to hire appellate counsel. (*See* D.I. 76 at 7) But that is not the type of "unforeseen or uncontrollable event" that is

1

sufficient to show good cause to extend an appeal deadline. *See Joseph v. Hess Oil Virgin Islands Corp.*, 651 F.3d 348, 355-56 (3d Cir. 2011). Nor do the relevant circumstances, including the need to hire new counsel, establish any excusable neglect on Defendants' part. *See Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 324-28 (3d Cir. 2012). To the contrary, Defendants have known since September 2016 – when the Court granted summary judgment to the FEC on liability, which is the issue Defendants contend they have always been planning to appeal (*see, e.g.*, D.I. 76 at 2 ("[T]he core of this case has always been the validity and enforcement of a regulation that will be fully explored on appeal."); D.I. 81 at 5 ("[T]his case has always been aimed at an appeal.") – that they would need appellate counsel.

3. Defendants further request an extension of the deadlines for filing post-judgment motions, such as a motion for reargument under Local Rule 7.1.5, a motion for amended or additional filings under Federal Rule of Civil Procedure ("FRCP") 52(b), or a motion to alter or amend the judgment under FRCP 59. (D.I. 76 at 9) The Court, however, cannot grant extensions to the time limits provided in Rules 52(b) and 59(b), (d), and (e). *See* FRCP 6(b)(2). In any event, there is no good reason to do so – Defendants' search for appellate counsel does not warrant an extension, and in any case Defendants have had since last September to contemplate filing motions.

4. Defendants also request a stay in the execution of the judgment pending a decision on Defendants' post-judgment motions and pending appeal. (D.I. 76 at 9) Under FRCP 62(b), "[o]n appropriate terms for the opposing party's security, the court may stay the execution of a judgment," pending disposition of motions under Rules 50, 52(b), 59, or 60. Defendants have not offered "appropriate terms" for the FEC's security; nor have they attempted to demonstrate

2

that "providing adequate security is impossible or impractical." *See Gallatin Fuels v. Westchester Fire Ins. Co.*, 2006 WL 952203, at *2 (W.D. Pa. Apr. 12, 2006). Thus, the Court will not grant a stay pending post-judgment motions.

5. With respect to a stay pending appeal, Rule 62(d) provides that an appellant may obtain a stay of monetary judgment pending appeal by posting a supersedeas bond. The Court, however, "may forego that requirement when there are other means to secure the judgment creditor's interests." *In re Diet Drugs*, 582 F.3d 524, 552 (3d Cir. 2009). As with the requested stay pending post-judgment motions, the Court is not convinced that the judgment is adequately secured, and Defendants' arguments on this issue do not address the FEC's concerns about the security of the judgment. (*See* D.I. 76 at 8; D.I. 81 at 3)[1]

6. Defendants further ask the Court to suspend the judgment to retain jurisdiction over the case to consider post-judgment motions. (D.I. 76 at 9) But the Court need not take any action to maintain jurisdiction over post-judgment motions of the sort that Defendants have suggested they would file. *See* FRAP 4(a)(4).

7. Finally, Defendants request that they be allowed to supplement the record to

---

[1]As the FEC writes:

> [T]here is reason to believe that defendants will fail to satisfy the judgment. . . . [D]efendant Christine O'Donnell has refused to provide any information in this litigation about her current income or the location of any assets. Defendant Friends of Christine O'Donnell's latest FEC report indicates that it has only $571.96 cash on hand and $14,118.92 in debts. . . . At least one of defendants' attorneys has already withdrawn from this matter citing lack of payment.

(D.I. 78 at 7) (internal citations omitted)

3

introduce an article written in 2010, in which O'Donnell references security concerns associated with her residence. (D.I. 79 at 3) It is within the Court's discretion to allow O'Donnell to supplement the record; in exercising such discretion, courts generally consider "1) the timing of the motion and the moving party's explanation for failing to introduce the evidence earlier, 2) whether the evidence sought to be introduced is especially important or probative and 3) whether reopening will cause undue prejudice to the nonmoving party." *In re Chemed Corp.*, 2017 WL 1712530, at *5 & n.5 (D. Del. Apr. 25, 2017). Here, the Court exercises its discretion to deny the request.

8. Defendants' motion is woefully untimely. It comes more than one year after the close of discovery (D.I. 41 at 2), more than seven months after the Court granted the FEC summary judgment on liability, and after the Court assessed an appropriate remedy. (*See* D.I. 82 at 4) ("[Defendants] made no attempt to contradict the FEC when it argued that the sham-address theory was first put forward by [D]efendants at O'Donnell's deposition, and they made no attempt to correct the Court's similar statements in the seven months between the issuance of the liability opinion and the remedies opinion, despite the fact that defendants filed two joint status reports and two letter briefs in those intervening months.") Defendants provide no persuasive explanation for their untimeliness. To the contrary, there is no doubt that O'Donnell knew since approximately 2010 that she had cited security concerns in at least one press account,[2] yet in this litigation it was not until her February 2016 deposition that she chose first to raise this issue as the basis for using campaign funds to pay for her personal residence.

---

[2]*See, e.g.*, D.I. 79 at 2 (Defendants arguing, "Ms. O'Donnell announced the 'security measures explanation' (as the Court identifies) before September 2, 2010, <u>before</u> Melanie Sloan filed her complaint [on September 20, 2010] and <u>before</u> the FEC began to investigate.").

9. Moreover, the article O'Donnell belatedly seeks to add to the record is not especially important or particularly probative of any issue in the case. The inconsistency the Court identified in O'Donnell's security measures explanation was just one of many points that went into the Court's discretionary determination of the appropriate remedy. Contrary to Defendants' assertion, "the Court's belief that there was only recent fabrication" is ***not*** "the most significant and central factual proposition in the case" and is not even "a central fact upon which the entire case turns." (D.I. 79 at 3) Most pertinent to resolution of the motion to supplement is the fact that, as the FEC observes, "[i]t remains undisputed that defendants never argued in this matter that security concerns justified their personal use of campaign funds until O'Donnell's 2016 deposition." (D.I. 82 at 1; *see also id.* at 7 ("O'Donnell may have mentioned security concerns to a reporter in 2010, but that does not change the factual claims and legal arguments defendants pursued before the Court."))[3]

10. To the extent that Defendants' motion to supplement is also a request under Rule 52(b) to amend findings, under Rule 59(e) to amend the Court's judgment, or under Local Rule 7.1.5 for reargument (D.I. 79 at 5; D.I. 83 at 3), Defendants do not meet the high standards to warrant these types of relief. *See Roadmaster (USA) Corp. v. Calmodal Freight Sys., Inc.*, 153 F. App'x 827, 829 (3d Cir. 2005) (Rule 52(b)); *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (Rule 59(e)); *MobileMedia Ideas, LLC v. Apple Inc.*, 966 F. Supp. 2d 433, 437 (D. Del. 2013) (reargument). There is no indication that this article is newly discovered. (*See* D.I. 82 at 6) And, importantly, the article does not contradict the Court's

---

[3]While it appears there would be no significant prejudice to the FEC from supplementing the record, this factor is far from dispositive in this circumstances of this case.

footnoted discussion about the security measures explanation, the Court's earlier analysis of the issue in connection with determining liability, *see FEC v. O'Donnell*, 209 F. Supp. 3d 727, 738 (D. Del. 2016), or otherwise suggest that the Court misapprehended the relevant facts.

Accordingly, IT IS HEREBY ORDERED that Defendants' motions (D.I. 76, 79) are DENIED.

May 19, 2017
Wilmington, Delaware

HON. LEONARD P. STARK
UNITED STATES DISTRICT JUDGE